UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2021 NORTH LE MANS, LLC, and
DONALD E. PHILLIPS,

    Plaintiffs,

v.                                          CASE NO.: 8:10-cv-655-T-23TGW

FIFTH THIRD BANK,

    Defendant.
_____/

## **ORDER**

      The plaintiffs sued (Doc. 2) in state court for usury, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and constructive fraud. The defendant removes (Doc. 1) and, pursuant to Rules 12(b)(6) and 12(e), Federal Rules of Civil Procedure, moves to dismiss or, in the alternative, for a more definite statement. Additionally, the defendant moves (Doc. 12) to strike the plaintiffs' jury trial demand. The plaintiffs oppose (Docs. 19, 25) both motions and request leave to amend.

<u>Allegations of the Complaint</u>

      The plaintiffs 2021 North Le Mans, LLC, and Donald E. Phillips ("Phillips") sought a sixty million dollar loan from the defendant Fifth Third Bank (the "lender"). As a result of the lender's "last minute change before closing," the plaintiffs obtained instead a loan in the amount of $55.3 million, with Phillips as the guarantor and the 2021 North Le Mans real estate as security. The loan finances the development of the Le Mans Apartments and matures on August 16, 2010. Although the loan consists of a single

promissory note held by the lender, two other banks (Compass Bank and U.S. Bank) "participate" in the loan by each lending $15 million of the $55.3 million.

The plaintiffs allege that the lender's "last minute change" caused the plaintiffs "substantial commercial duress." The lender's "last minute change" allowed the lender to re-negotiate "several contractual provisions" in order to (1) reduce the "interest reserve," (2) coerce the plaintiffs into entering a "SWAP agreement regarding interest rates," and (3) coerce the plaintiffs into entering "a 50% transaction" with the lender's "derivatives department." The changes to the lending agreement occurred "without the consent of the other two participating banks" and "unfairly favored [the lender] over the other two participating banks."

Additionally, the plaintiffs allege that the lender "earned the normal interest rate, the default interest rate as of May 2009, the SWAP interest rate, the default interest rate on the SWAP, is seeking $5,000,000 in settlement costs from the borrower for settlement of the SWAP with Mellon Bank and 1/2 point commitment fees."

## Discussion

### *1. Usury*

To state a claim for usury, a plaintiff must allege facts showing (1) a loan, (2) an obligation to repay, (3) an interest rate greater than the rate permitted by law, and (4) the lender's corrupt intent. See Dixon v. Sharp, 276 So. 2d 817, 819 (Fla. 1973). Section 687.02, Florida Statutes, defines a "usurious contract" as a "loan, advance of money, line of credit, forbearance to enforce the collection of a debt, or obligation [that] exceeds $500,000 in amount or value . . . [with a] rate of interest [that] exceeds the rate

prescribed in [Section] 687.071." Section 687.071 prohibits an interest rate exceeding twenty-five percent.

In count one, the plaintiffs state the elements of usury and allege that the loan's repayment requirement obligates the plaintiffs to pay "in excess of the legal rate of 25%." The plaintiffs vaguely and conclusorily allege a "corrupt device to cover usury" by the lender. The complaint lacks a factual allegation as to either the lender's corrupt intent or "corrupt device." The complaint also lacks a coherent factual basis for the claim that the lender charged an interest rate in excess of twenty-five percent. Accordingly, the factual allegations are insufficient to state a claim for usury.

*2. The Duty of Good Faith & Fair Dealing*

"'[A] duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract [that] may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements.'" Ament v. One Las Olas, Ltd., 898 So. 2d 147, 149 (Fla. 4th DCA 2005) (quoting Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc., 710 So. 2d 573, 575 (Fla. 4th DCA 1998)); Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1359 (M.D. Fla. 2007).

In count two, the plaintiffs allege that the defendant breached the duty of good faith and fair dealing by (1) "using the last minute change in loan amounts to re-negotiate the contractual provisions regarding the reduction of an interest reserve," (2) "using the last minute change in loan amounts to coerce Plaintiffs into entering a SWAP agreement regarding interest rates that covered the entire loan amount but

- 3 -

unfairly favored Fifth Third Bank over the two other participating banks," (3) unlawfully coercing the plaintiffs "into entering into a 50% transaction with Fifth Third's derivatives department," (4) "interfering with Plaintiffs relationships with other participating lenders," (5) "charging a usury interest rate," and (6) "[c]ommitting these and other predatory lending practices."  The plaintiffs fail to allege either that the lender breached a contractual provision or that the lender's alleged conduct relates directly to the performance of a contractual provision.  In fact, most of the conduct constituting an alleged "breach" occurred before the parties entered a contract.  Accordingly, the factual allegations fail to support a claim for breach of the duty of good faith and fair dealing.

### 3. Breach of Fiduciary Duty

"Generally, the relationship between a bank and [a] borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities."  Capital Bank v. MVB, Inc., 644 So.2d 515, 518 (Fla. 3d DCA 1994).  However, if a bank transacts with a customer with whom the bank established "a relationship of trust and confidence" and the transaction is one "from which the bank is likely to benefit at the customer's expense," the bank assumes a duty to disclose to the customer a fact (1) material to the transaction, (2) "peculiarly within [the bank's] knowledge," and (3) "not otherwise available to the customer."  Barnett Bank of West Fla. v. Hooper, 498 So. 2d 923, 925 (Fla. 1986); Capital Bank, 644 So. 2d at 518-21.

In count three, the plaintiffs appear to allege (1) that the lender's agents defrauded the plaintiffs and (2) that the agents' fraud resulted in a breach of the lender's fiduciary duty.  The lender allegedly breached a fiduciary duty by (1) "using the last

- 4 -

minute change in loan amounts to re-negotiate the contractual provisions regarding the reduction of an interest reserve," (2) "using the last minute change in loan amounts to coerce Plaintiffs into entering a SWAP agreement regarding interest rates that covered the entire loan amount but unfairly favored Fifth Third Bank over the two other participating banks," (3) unlawfully coercing the plaintiffs "into entering into a 50% transaction with Fifth Third's derivatives department," (4) "interfering with Plaintiffs relationships with other participating lenders," (5) "charging a usury interest rate," and (6) "[c]ommitting these and other predatory lending practices."

Although both Hooper and Capital Bank recognize that, under special circumstances, a bank may possess a duty to disclose certain material information "peculiarly within [the bank's] knowledge," the plaintiffs fail to show either (1) a fact supporting the existence of a fiduciary relationship or (2) any of the special circumstances present in Hooper or Capital Bank,[1] which circumstances would support the existence of a fiduciary relationship. Accordingly, the factual allegations are insufficient to state a claim for breach of fiduciary duty.

*4. Constructive Fraud*

"[C]onstructive fraud occurs 'when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken.'" Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170,

---

[1] The lender (correctly) recognizes that both Hooper and Capital Bank limit the finding of a fiduciary relationship between a bank and a customer to a particular set of facts. In each instance, the bank facilitated a transaction between two of the bank's customers, possessed confidential information about each customer, and failed to disclose material information to a customer, which failure resulted in harm to a customer.

- 5 -

1179 (M.D. Fla. 2005) (Hodges, J.) (quoting Levy v. Levy, 862 So. 2d 48, 53 (Fla. 3d DCA 2003)).

> To state a claim for breach of a fiduciary or confidential relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." Constructive fraud will not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other. The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party.

390 F. Supp. 2d at 1179 (citations omitted). Additionally, Rule 9(b), Federal Rules of Civil Procedure, requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

In count four, the plaintiffs allege (1) that the lender trained each agent in sales, marketing, and counseling borrowers through the loan application process; (2) that, without the training, each agent "could not have defrauded [the] [p]laintiffs;" (3) that each agent possessed a duty under a confidential or fiduciary relationship; (4) that each agent abused the relationship; (5) that each agent made "numerous false statements concerning material facts including, but not limited to, the loan amounts, the interest reserve, and the nature of and effect of the SWAP agreement;" (6) that the lender should have known the falsity of each statement; and (7) that the plaintiffs justifiably relied on each statement. The allegations both fail to "state with particularity" the circumstances constituting fraud and fail to allege facts supporting the existence of a confidential or fiduciary relationship.

*5. Jury Trial Demand*

"A party may validly waive [the] Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." Bakrac, Inc. v. Villager Franchise Sys., Inc., 164 F. App'x 820, 823 (11th Cir. 2006). The validity of a jury trial waiver in a contract depends upon (1) "the conspicuousness of the waiver provision," (2) "the parties' relative bargaining power," (3) "the sophistication of the party challenging the waiver," and (4) "whether the terms of the contract were negotiable." 164 F. App'x at 823-24.

The lender moves (Doc. 12) to strike the plaintiffs' demand for a jury trial. In support of the motion, the lender cites (1) a "Waiver of Jury Trial Agreement" both initialed and signed in the presence of witnesses by the plaintiffs; (2) a schedule to the "ISDA Master Agreement," which schedule contains a "waiver of trial by jury" and which schedule Phillips executed; (3) a "commitment letter" containing a paragraph entitled "waiver of jury trial," which paragraph is in all capital letters; and (4) an opinion letter by the plaintiffs' counsel stating that the loan documents consist of "valid and binding obligations . . . ." The lender argues that the plaintiffs are sophisticated, experienced borrowers who "cannot complain that they were surprised by or did not have advance notice that a jury trial waiver would be part of the subject loan transaction."

In response, the plaintiffs provide a wholly insufficient memorandum of legal authority, which memorandum simply (1) "object[s] to litigating the various issues of this case until the disqualification issues have been resolved" and (2) both purports to "reserve the right . . . to file an amended opposition" and requests leave to file an amended opposition. On April 15, 2010, the plaintiffs withdrew (Doc. 27) the motion to disqualify the lender's counsel.

Conclusion

The defendant's motion (Doc. 4) is **GRANTED** to the extent that the complaint is **DISMISSED** for failure to state a claim. The plaintiffs may file an amended complaint no later than **May 13, 2010**. Additionally, the plaintiffs are directed to show cause in writing on or before **May 10, 2010**, why the motion (Doc. 12) to strike should not be granted. Failure to comply with this order will result in treatment of the motion as unopposed.

ORDERED in Tampa, Florida, on May 3, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE